Okay, Mr. Sebaugh, whenever you're ready to proceed. Good morning, and may it please the Court, my name is Thomas Sebaugh, and I represent the daughter of Eric Haymes, as well as his estate. And with the Court's permission, I'd like to reserve two minutes for rebuttal, please. The police officers in this case violated the clearly established constitutional limits on deadly force when they shot and killed Eric Haymes in the absence of an immediate threat of death or great bodily harm. Counsel, I'd like you to answer a general question for me. In the opinion-granting summary judgment, are there specific facts you believe that the District Court failed to view in the light most favorable to your client as the non-moving party? I think that the District Court's finding that Haymes posed an immediate threat of death or serious bodily harm, it's not viewing the video in the light most favorable to Mr. Haymes. The video shows that Mr. Haymes was not charging the officers, was not threatening the officers, was not brandishing the knife or swinging it, his arms were crossed, he's not moving the knife in any way, he's shot without warning. At the time he was shot, nobody was injured or was in any danger, and his only crime was having behaved erratically and fleeing from the officers when they first encountered him. The video also shows the officers positioned a safe distance away. So I think that viewing the video in the light most favorable to Haymes, he did not pose an imminent threat of death or serious bodily harm at the time he was shot. Can I ask, is that particular question a factual question that the jury ultimately has to resolve, or is that a legal question that the court takes on? The question of the level of the threat is a question of fact. I think the district court's decision turned on a question of law, which is whether that the standard or the rule regarding deadly force was clearly established as it applies to this case. The district court determined, and we think this is the error in the district court's decision, that the rule that a suspect must pose an imminent threat of death or serious bodily harm at the time he was shot was not a level of generality for it to apply with obvious clarity in this case. And therefore, the district court determined that the law was not clearly established. Our position, relying on Hayes and Glenn and the Aguirre case that the court decided earlier this year, is that the law was, in fact, or does apply with obvious clarity in a case where someone does not pose an imminent threat of death or serious bodily injury at the time. So if I understand it correctly, the bottom line, what you are seeking is reversal and remand for a jury to determine that there's a factual question for the jury, not as a matter of law that you win, but rather that you get to a jury. Am I right? Yes, certainly, Your Honor. Okay. And that was how the court disposed of similar questions in the Glenn case and also in the Aguirre case. And if I could point to one case that I thought that I submit would be particularly helpful as a reference point, it would be this court's decision earlier this year in Aguirre. That involved not a person with a knife, but a person with a baseball bat or bat-like object. But the court determined that whether he posed an imminent threat of death or serious bodily injury was, at a minimum, a triable issue, such that it should be remanded for a finder of fact to make that determination. I submit that the video which the court received does not, or at a minimum, is a video from which a reasonable juror could conclude that Mr. Haymes did not pose an imminent threat of death or serious bodily harm at the time he was shot. And can I ask, your theory as to why that's true is mainly because Mr. Haymes had not gotten close enough to the nearest officer or something different? Well, of course, it is the totality of the circumstances. I would say that the fact that he was holding the knife tucked under his arm is clearly insufficient in itself to justify shooting him. And that the court has made clear on many different occasions. We reviewed the cases. There are people armed with, in one case, a football-sized rock, another case, a Civil War cavalry saber, in another case, a gun, large knives, and small knives. The issue in each case is whether the person posed an imminent threat of death or serious bodily injury at the time the person was shot. And in this case, simply, that's not, that's something that a reasonable juror could conclude was not the case. Well, okay, but yes, I hear your argument on that point. I guess I'm just trying to probe why you think that's true. If Mr. Haymes had taken, I don't know, several more steps toward the officer and had, I assume he was being given commands to stop and drop the knife. I think that's reasonable to assume, right? Well, I think that's in the record that he was given commands to drop the knife. However, he was not given a specific warning that deadly force would be used. Well, if someone's pointing a gun at you point blank and is telling you to do something and you are not complying, I think it's a safe, I think you can infer that probably what the consequence is going to be that you're going to get shot. So I would just put that aside. I think what I'm trying to ask is, is it, it's really the distance? I mean, we have Kissela and that's the case that the district court, I think, relied upon most heavily. Obviously, the distance is much closer there. Is that, that's really what you're, you're pointing to? Because if, if Mr. Haymes had been within striking distance of the officer, I think you'd have to concede that maybe in that circumstance, the shooting would have been justified or no? Well, I, I think that the, yes, one could imagine a hypothetical scenario where he approached the officer, raised the knife in a stabbing motion and, and was shot. I mean, I think that in the circumstances in the Kissela case, the issue was that the, the person armed with a knife had approached within striking distance of another person. And under those circumstances, the officer concluded that it was in defense of that person, it was necessary to, to shoot the person who was armed with a knife. But I think it's not the, the constitutional issue here, the constitutional limit on deadly force is not simply a function of distance. And in fact, if it was, that would be a, it would be very difficult to reconcile this decisions with each other if it is simply a calculus of distance. Because there are some, there are cases where a person is some considerable distance away from the officers and qualified immunity has been found to attach. And there's been cases where the person is very close to an officer and qualified immunity has not attached. And so looking for a rule that is formulated per se as a question for distance is not, is not helpful or practical. The rule is, does the person pose an imminent threat of death or serious bodily injury? That is the general rule, but also the most specific, I'm sorry? No, no, please continue. I think that's, that's the most specific formulation that, that one could arrive at. Suppose hypothetically that this court were to lay down a rule in this case that shooting someone at a distance greater than 20 feet is per se unconstitutional and shooting someone within a distance of 20 feet is per se constitutional. Clearly that rule would be unworkable and likely to be reversed because the Supreme Court has indicated there are no per se rules in this context and per se rules are unworkable. But certainly, certainly it's a factor. You know, with, with a gun, you know, you can be 40 feet away and be imminently threatened. With a knife, it's quite difficult to say you'd be imminently threatened at 40 feet unless someone is running at you or something like that. So it seems like it ought to be a factor. Yes, and I do agree that it's a factor. Certainly the fact that Mr. Hames has a knife is a concern. It may be fairly said that it is a potential or possible threat. But the issue is that in this case, as shown by the video, the threat does not become imminent and no one is in any immediate danger of death or serious bodily injury at the time he is shot. Did you raise, did you raise with the district court the possibility of, if you went to trial, being able to provide an expert in knife fighting and what constitutes the ability to instantly use a knife as opposed to having it tucked under your arm? Well, we did present the testimony of Roger Clark, which is, which we have, who opines explicitly that that does not constitute an immediate threat. The fact that he has a knife does not in itself justify shooting him and does not in itself constitute. But he wasn't, he wasn't a knife fighting expert. He was an expert in the general area. Well, I think he's an expert in police officers' practices when they encounter people with knives. And his opinion, and I note that in the S.R. Nihat case, this court explicitly relied on Dr., on Mr. Clark's opinion that the knife did not constitute an immediate threat in denying qualified immunity and in finding that there was a triable issue as to whether the threat was immediate. So on that basis, we argue that, yes, there was at least at a minimum a triable issue as to whether, in light of the video, Mr. Hames posed an immediate threat at the time he was shot. Okay. Do you, do you want to save the rest of your time for rebuttal? I'll save the balance of my time for rebuttal if there are no other questions. Very good. Okay. Let's hear from counsel for the defendant. Thank you, Your Honor. This is Dale Allen representing the officers involved in this. I'm also arguing on behalf of Mr. Kenevey, who's represented by Paul Goyer. So my name, again, Dale Allen. I think the court has gotten to the essence of this case. This is a second-prong analysis by the district court, whether or not there was some precedent out there to instruct these officers that they weren't facing a threat of deadly harm in which they could then use lethal force. Counsel, it seems to me this is just a copy, a copy of Glenn almost entirely. And just to give you my own view, which may be not, neither here nor there, but when I see that video, I don't see an immediate threat. Your Honor, thank you, Your Honor. I understand what you're pointing out. In Glenn, the young teenager was suicidal with a pocket knife. In this case, Mr. Haynes had brandished a 6-inch bladed knife at the officer. And by way of demonstration, I'm just holding a 6-inch ruler in my hand with the 6 inches protruding. That's the knife blade that the officers were dealing with. And the manner in which he was holding it, which is undisputed, was in a downward manner and copied. Counsel, this is an excellent jury argument, but it seems to me that's where it belongs. The decedent had not made a verbal threat according to the officer's testimony. The knife was not held out at the time. He was distant. At least one officer testified that they never considered the use of nonlethal force. They had room to back up. It just seems to me that there's a jury issue here. Your Honor, I can speak to each one of those as they are distinguishable from Glenn. And I would also point out a Gary should not be considered because it's not instructive to the officers at the time of this incident. But the officers were first called to the scene. And this is a totality of the circumstances, classic totality of the circumstances, information to the officers to make a decision as to the nature and the immediacy of that threat. The officer who first responded to the scene, and this is undisputed by both Mr. Clark, the expert, and the plaintiffs don't or appellants don't dispute this, that when Officer Rossi arrived at the scene of a busy intersection with numerous people around us depicted by the cell phone by a bystander, Mr. Hames ran up to the police car, an officer in a marked radio car, and pulled that knife out. But at the time of the shooting, that was not the case. That's true. At the time of the shooting, they were distant from him. And they, at least as far as I could tell from the video, they all had room to back up. Well, Your Honor, I need to lay out the fact that this is not isolated as starting at the moment in time the video shows. The officers are people who are trained to take everything they've seen, done, and heard up to the point to assess exactly what was going on. And aren't they also trained, or at least shouldn't they be trained, that they should consider the possibility of nonlethal force? And at least one of these officers testified that they didn't discuss that at all. They didn't think about that at all. Your Honor, I agree they didn't discuss it because if you watch the video, and as the video is demarcated, Officer Goodering and Officer Rossi arrive almost immediately and take nearly a 40-foot distance in order to bracket Mr. Hames so he could not run in the direction he had been running, leaving open the area that he had just come from. Officer Kenevey arrives within 15 to 20 seconds later. He takes a separation as trained. And then finally when Officer Leonard arrives, he is literally arriving at the point in time that the movement by Mr. Hames starts. There is not time to take and deliberate as to who's going to use what force. Well, there's time to move back.  You know, it happened so quickly that it just, well. Your Honor, to that point specifically, for two minutes Officer Rossi was instructing him to drop the knife. If you watch the video closely, you'll see Officer Rossi talking to him. He then backs up against the slit of his car, drops his gun to a low ready so he's not pointing at him, trying to get Mr. Hames to focus on him and drop the knife. The other officers are not talking. This is all part of their de-escalation technique, which is undisputed as trained by the department and under post. So efforts are being made to get him to drop the knife. The fact is, from the moment he started running, he never dropped that six-inch bladed knife. Counsel. Yes, sir. Your brief repeatedly emphasizes that Hames had brandished a knife or was brandishing a knife and that this created a real and not potential threat of safety to the officers. And you cite to Blanford and Smith v. Setty of Emmett for support that brandishing a knife and threatening an officer creates an imminent threat. In the red brief, you say Hames was less than two highway lanes in California apart from the officers the time he advanced on Officer Girding brandishing the knife. And a couple of pages later, you say Hames had brandished the knife in the middle of traffic, fled to a nearby shopping plaza. He not only brandished the knife at officers, he advanced toward them. We've held in Allbritain, U.S. v. Allbritain, that for brandishing a weapon to apply in the context of sentencing enhancements, the guilty party must have been waving, flourishing, or displaying ostentatiously. That's based on the dictionary definition of brandishing. I watched that video about ten times. Where in it is he waving, flourishing, or displaying ostentatiously? Your Honor, I need to ask you a question first. Am I too loud? Because I'm in the Zoom and I can't tell if I'm speaking too loud or not. You're fine. You're fine. Thank you. I'm deaf, so you're fine with me. The brandishing occurred in front of Officer Rossi when he was at Churn Road. That's not what you say in the red brief. It's also not when he was shot. I mean, if he brandished something ten minutes ago, that doesn't necessarily justify shooting him the ten minutes later. That's the issue here. And you don't stick to just the traffic incident. You say he's brandishing at the officers when they shoot him. The officers believed that when he was holding that knife underneath his arm in a fighting position, as they testified, that was a form of brandishing. To the extent the court feels that is an overuse of rhetoric, I am relying upon how the officers have described it and described it in their depot, which is part of this record. But they also, as the district court noted, they also, at least one officer, misunderstood the distance between him and the decedent as being much less than it actually was. So maybe they were mistaken about that too. Well, it's not a mistake, Your Honor. An estimate is their best estimate. Fifteen feet versus twenty is a matter of five feet. That's a stride and a half. And from different angles as they're watching different things. Each one of those officers had their own particular perspective of how he was holding that knife and acting before they fired. One thing that is completely undisputed is he started making movements towards Officer Guteri. And the whole thing, as you pointed out, I'm not here to say there is a distance that's greater or less than when an officer should fire. I do believe the video shows that this man in the totality of all the circumstances and in their perception and a mistaken perception found it in the totality is something the courts have addressed many times over the past as something that an officer can be allowed. Now, I do understand if this court feels this is not a true mistake and a subjective mistake, then that might be an issue to reverse the ruling of the district court. But when that man was holding that knife in a fighting position, as described by the officers in their depositions, not disputed by Mr. Clark, not in the record anywhere, not cited by counsel, that knife was a deadly threat to those officers in all of the circumstances leading up to the point that he has rested for nearly two minutes. And in the face of four officers firing guns, does it move sideways towards where there is no officer? That is, as you watch the video, that which way he ran in and stopped. He moves toward an officer, and at which point, not one officer, but all four of them independently because they had not discussed what or when they would shoot. They were all individually relying upon their belief, training facts that an imminent threat of harm was about to occur to Officer Goodering, and Officer Goodering believed that. Counsel, I want to go back to the brandishing arm of this. Yes. Number one, are you abandoning, in light of the legal definition of brandishing, which I read to you, are you abandoning the use of the word brandishing and switching to fighting position? And is there authority that says that holding a knife in fighting position is sufficient under these circumstances? And two, number two question, is I've been in combat, and I've been trained in knife fighting. I don't see in the video that he is holding that knife in a fashion such that it is readily available to come to use. It seems to me from the video, it looks to me like he's holding it upside down and backwards in a fashion such that it would be difficult to bring it immediately into a stabbing position. So, if that's what I get out of it, how can a jury, why can't a jury make that determination? Your Honor, I would answer your first question. I am not abandoning brandishing. It actually is the brandishing of the time he's facing Rossi, and it's brandishing in the view of the officers at the scene. The brandishing, in fact, and again, I started to demonstrate, I don't want to use the prop, but if he's holding it, holding it as he has been described and is undisputed with the handle in his hand, the knife down, cupped under his arm, that's a knife that can be stabbed immediately. It's a downward striking tool. That's right, but he has to be much closer to the person he's attacking than if he's holding it in reverse. I agree with that, Your Honor, and that's a place that he would have been within moments if he started running again, and this is a man that had shown he would run and he can run fast. We capture that in video by the cell phone, by other video that was produced, and again, nobody's disputing that he was a runner. That was the risk that the officers were contemplating at that moment in time that he started walking towards him against all instructions to stop, drop the knife, get on the ground, and had already shown that propensity to do so. I go back that the district court looked at Glenn and found that it was inapplicable and looked at other cases, didn't find another case that would be applicable to this scenario, yet two cases come out favorable to the police in the following year, Ventura and Buchanan, and in fact plaintiffs offer a case called Nemat that is favorable to their position again the following year. And the qualified immunity application under the second prong is what's the precedent for the officers? Your Honor, I only have two minutes. I'd like to raise one other point. Should this court be inclined to reverse on the Fourth Amendment issue under qualified immunity, I would ask that the court still consider this as a de novo, taking up both the second and first prong for the Fourteenth Amendment issue, and that there was no purpose to harm or deliberate indifference shown in any of these facts. What we have is officers making a judgment call based on their understanding of the precedent, all the facts in front of them, the totality of the circumstances, and each acting independently judges to be an imminent threat if the court should believe that it was mistaken and is a disputed fact and should go to the jury. The level of analysis to a purpose to harm deliberate indifference at the Fourteenth Amendment is a much higher standard and certainly by no means something laid out in any case authority they provided. They raised the de novo issue of revisiting the first issue on excessive force, and I just want to be clear that we'd have the court inspect and review that the Fourteenth Amendment should not be reversed in the event they reverse the Fourth Amendment and send this back to the trial court. And I'll submit unless there's any other questions. Just one other question. Did the district court do a separate Fourteenth Amendment analysis? That's what I was trying to look quickly. The only thing in the district court's opinion is it's a dismissal of the last paragraph of both the Fourth and Fourteenth without doing an analysis directly to the purpose to harm. As I'm flipping through it again really quick, but that is... It looks like it's just a Fourth Amendment analysis, right? No, I believe it. Yeah, it's a Fourth Amendment analysis, but he ends up dismissing under the Fourth Amendment, which I think speaks to there was never a Fourteenth Amendment claim here. No, no. Yeah, I was asking that because typically we wouldn't take up a question, you know, in the first instance ourselves that the district court hadn't addressed. It sounds like that's what you're asking us to do. I just was trying to... I am asking. I guess I am asking that because the appellants raised the First Amendment, the first prong and discussed the Fourteenth Amendment. So, we discussed it, I think, briefly in our reply brief. I just wanted to make a record on that. Very good. Okay, thank you. We appreciate that. Let's see. We have plenty of time for rebuttal. Mr. Siva? Yes, thank you. With respect to the procedural configuration of the case, the district court addressed only the second prong of the qualified immunity analysis, namely whether the law was clearly established and on that basis decided the motion. The district court did not decide in the first instance either the Fourth or Fourteenth Amendment claim as to the substantive constitutional question. And for that reason, our position should be the court should reverse on that particular question of law and remand for the district court to conduct further proceedings consistent with this opinion. That would be our recommendation. So, it wouldn't be necessary for the court to take up the merits of either claim. On the Fourteenth Amendment issue, I will say, though, just not to leave the argument unanswered, that our position is that this is a video that a juror could watch and it would shock their conscience. It shocked my conscience when I saw it for the first time. And that is the Fourteenth Amendment standard in general. In the Nahat case, the court considered whether there could be a Fourteenth Amendment claim in this context. In that case, that was a man armed with a knife who an officer shot while the man was approaching the officer once. And, candidly, the court decided in that case that it did not constitute a Fourteenth Amendment violation as a matter of law because it was not so grossly and unreasonably excessive that it could alone evidence a subjective purpose to harm. I think, or I would submit that in this case, the video, the fact that he does not pose an imminent threat, the sheer number of bullets that were fired, six or seven from a pistol, four from a shotgun, would be, or a finder, in fact, could conclude were so grossly and unreasonably excessive that it would shock the conscience. However, again, this court does not need to address that issue in the first instance. Counsel, is there, just assuming for the sake of this question, that both a Fourth Amendment and a Fourteenth Amendment claim went to a jury, is there a different standard for what would be available, or is there something different about the result from those two kinds of claims that is potential? The district court had the same question and oral argument as to whether we really needed it or it got us any additional remedies. And the position that the appellants took was that, just in case, we wanted to preserve it in case it provided a backstop for any additional remedies, but it's not, of course, it's not at the center of this case or this appeal. Well, I think that's not actually correct. We don't need to go into it here, but it depends on which of the plaintiffs is bringing the claim. So, but anyway, do you have other points you want to address on the merits of the Qualified Appeal? Yes, just on the, to go through and quickly respond to a number of things. On a jury, that was decided subsequently in our case, but our position is that it does not announce a new constitutional rule. It's helpful only because it rejects a very similar argument made about the rule on imminent threats operating at too high a level of generality. That argument was made in that case and rejected by this court. And this court said that whether a, that the rule that deadly force cannot be used absent an imminent threat of death or serious bodily injury applies with obvious clarity and is clearly established without any need for additional, an additional, additional steps to clearly establish it in the context where someone does not pose an immediate threat and is shot. The officers formed a semicircle by their own admission around Mr. Hames. So from the standpoint of geometry, it's true that any motion he makes in any direction will be towards an officer, but that does not in itself indicate that he was threatening or intending to attack an officer. I think that the, the rule here is if it's, it's clear from this court's decisions that the mere fact that a person possesses a weapon does not justify a deadly force. Deadly force is appropriate where the person threatens an officer with a gun or a knife or is charging an officer with a gun or a knife. And that's simply not something that we have here shown by the video. Okay. Thank you both for your arguments.  Thank you, Your Honor.
judges: GRABER, WATFORD, UNKNOWN